UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------x

KHYMANI JAMES,

        Plaintiff,

   -against-

VIRGINIA FOXX,

        Defendant
---------------------------------------------------------------x

Complaint

No:

Plaintiff Khymani James, by their attorney Jonathan Wallace, for their Complaint against Virginia Foxx, alleges as follows:

## PRELIMINARY STATEMENT

1. James brings this action against Congressperson Virginia Foxx, who represents North Carolina's Fifth District, because she has abused her role and authority as Chairperson and member of the House Committee on Education and the Workforce (the "Committee"), and as a member of Congress generally, to try to retaliate against and punish James for their First Amendment-protected criticism of Israel and support of the Palestinian people, by obtaining their expulsion from Columbia University. James sues Foxx both in her official and personal capacity. Foxx's interventions with Columbia naming James and demanding that the University throw them out, breach normal standards of decency, shock the conscience, serve no valid legislative purpose, and constitute intentional attempts to pressure Columbia into terminating its contract to provide an education to James.

## THE PARTIES

2. James is an individual who resided in New York at all relevant times, and was a junior at Columbia University when he was suspended in 2024 for pro-Palestinian activism.

3. Foxx is a Congressperson domiciled in North Carolina.

## VENUE AND JURISDICTION

4. This Court has federal subject matter jurisdiction over Plaintiffs' claims pursuant to 28 U.S.C. § 1331.

5. This Court has jurisdiction over the state law claim under 28 U.S.C. § 1367.

6. Venue is proper in this district under 28 U.S.C. § 1391 because "a substantial part of the events giving rise to Plaintiffs' claims occurred" within this judicial district.

## THE FACTS

7. During Foxx's time as Chairperson of the Committee, it undertook to re-enact the McCarthy era role of the House Unamerican Activities Committee, violating the First Amendment rights of students, professors and universities by conducting an inquisition, which resulted in suspension and expulsion of students, the termination of professors, and the bludgeoning of universities by funding cut-offs and other sanctions.

8. Instead of Communism, the Committee's *bete noire* was supposed antisemitism. However, completely ignoring violent and pervasive antisemitism on the right (witness the mass shootings at Tree of Life Synagogue and the recent synagogue arson in Jackson, Mississippi), the Committee was exclusively interested in what it regarded as left-wing criticism of Israel and support of the Palestinian people at universities.

9. In carrying out its purported investigation, the Committee, chaired by Foxx, deliberately and officially conflated anti-Zionism with antisemitism.

10. It did so in its official adoption of the International Holocaust Remembrance Alliance standards, which violate the First Amendment by their inclusion of quite ordinary and mainstream speech critical of Israel.[1]

---

[1] THE IHRA standards give as examples of antisemitism calling a Jew or Israeli person a Nazi, or saying that they are not entitled to a homeland, or urging that Israel be held to a higher moral standard than other countries, *Students for Just. in Palestine v. Abbott,* No. 1:24-CV-523-RP, 2024 U.S. Dist. LEXIS 196180, at *22-23 (W.D. Tex. Oct. 28, 2024)( "Plaintiffs argue that IHRA's labeling of these examples as antisemitic arguably proscribes their similar criticisms of Israel.... The Court finds the connections between these definitions sufficient at this stage to show Plaintiffs' planned conduct is arguably proscribed".)

11. The Committee also made its obliviousness to First Amendment protections obvious in its official communications to Columbia.

12. On February 12, 2024, the Committee wrote to Columbia, defining the scope of its inquiry as including, and demanding that it produce documents pertaining to, "attitudes toward pro-Israel views from members of Columbia's Middle Eastern Studies faculty", "protests and walk-outs of events related to the Jewish state", "the anti-Israel groups Students for Justice in Palestine (SJP) and Jewish Voice for Peace (JVP)", "anti-Israel protest[s]", a statement by the Student Workers of Columbia that "we stand in solidarity with the Palestinian people" and "affirm their right to self-determination and freedom from apartheid", student social media posts about "Zionists", the "anti-Israel" views of named Columbia professors and their references to "the Nakba, or catastrophe, of 1948", and student slogans including ""Israel is the new Nazi Germany". The letter called, in addition to any documents actually targeting Jewish people, any others indicating "the targeting of....Israelis, Israel, Zionists, or Zionism". Letter from Virginia Foxx to Columbia administration dated February 12, 2024, https://edworkforce.house.gov/uploadedfiles/2-12-24_foxx_letter_to_columbia_university.pdf

13. Despite the Committee's protestations, anti-Zionism is not antisemitism. [2]

14. Nonetheless, in October 2024, the Committee, under Chairperson Foxx, issued a report, "Anti-Semitism on College Campuses", https://edworkforce.house.gov/uploadedfiles/10.30.24_committee_on_education_and_the_workforce_republican_staff_report_-_antisemitism_on_college_campuses_exposed.pdf , in which it reveals James' name in Footnotes 267, 272, and 279, despite generally avoiding use of student names, falsely calls him an antisemite, and complains that he received "Only a One-Year

---

[2] "Most of the conduct about which plaintiffs complain is speech protected by the First Amendment, and we do not construe Title VI as requiring a university to quash protected speech. Furthermore, by gathering together in groups on campus, disrupting campus tranquility, and impeding travel for many students, the protestors did not render their speech antisemitic, much less unprotected", *StandWithUs Ctr. for Legal Just. v Massachusetts Inst. of Tech.,* 2025 U.S. App. LEXIS 27390, at *18 (1st Cir Oct. 21, 2025, No. 24-1800).

Suspension".

15. In July 2025, Columbia signed an agreement paying the federal government $221 million, and agreed to some restrictive and censorious terms imposed by the government, including adoption of the IHRA standards, to regain withheld federal funding. "This announcement is a devastating blow to academic freedom and freedom of speech at Columbia," said Todd Wolfson, president of the American Association of University Professors", Elissa Nadworny and Jordan Owens, "What we know about Columbia's $221 million settlement with the Trump administration", *NPR,* July 25, 2025 https://www.npr.org/2025/07/25/nx-s1-5479240/columbia-trump-administration-settlement-details

16. James believes that their suspension by Columbia, and Columbia's later insistence that it had the right to extend the suspension without end date, turning it into an expulsion in all but name, were baldfaced attempts to propitiate Foxx and the Committee.

17. Instead of being permitted to return to Columbia at the end of the one year suspension, James was made, under rules unilaterally changed by Columbia just a few months prior, to ask for permission to return, which was denied in August 2025, shortly after the $221 million settlement. James will be permitted to re-apply one more time, in April 2026, and fully expects that Columbia, in fear of Foxx and the Committee, will deny permission again.

18. The speech for which Columbia claimed to determine that James was an antisemite, and Foxx and the Committee also accused them of hating Jewish people, involved a number of references to Zionists and Zionism on James' personal social media.

19. James is not an antisemite.

20. Foxx has remarkably and rather carelessly confessed to her role in trying to blight James' education, career and their life, all in retaliation for their First Amendment-protected speech.

21. On September 12, 2025, Foxx, still Chair of the Committee, posted to her personal X account: "When I was Chair of the @EdWorkforceCmte the leadership at @Columbia made a direct

statement to me that Khymani James would be expelled for his antisemitic rhetoric - my committee staff at the time were present as well when the statement was made. He was not expelled. Nothing was done. @Columbia you have failed again, again, and again."

22. The same day, Columbia replied on X: "The individual in question has been barred from Columbia's campus since April 2024 and is not a registered student."

23. Foxx stepped down as Chair of the Committee effective January 2026, but continues too serve as a member.

24. Foxx has wrongfully succeeded in procuring James' de facto expulsion from Columbia, all in violation of their First Amendment rights.

## COUNT ONE-- First Amendment

25. Plaintiffs restate the foregoing paragraphs as if set forth fully herein.

26. Coercion of a third party can be the means by which the government violates the First Amendment rights of another. The First Amendment prohibits government officials from wielding their power selectively to punish or suppress speech.

27. Broad and sweeping state inquiries into these protected areas discourage citizens from exercising rights protected by the Constitution.

28. When it comes to the freedom of association, the protections of the First Amendment are triggered not only by actual restrictions on an individual's ability to join with others to further shared goals. The risk of a chilling effect on association is enough, because First Amendment freedoms need breathing space to survive.

29. The First Amendment proscribes the Government not only from directly infringing upon those rights but also from infringing upon them indirectly through the use of techniques like jawboning, a strategy which allows government officials to impact the speech of individuals like James, that they have no direct control over.

30. As outlined above, Foxx has directly, admittedly intervened with Columbia to get James expelled.

31. Foxx's interventions, and those of the Committee under her leadership, so intimidated Columbia that it apparently felt compelled to comply with whatever Foxx ordered, to assure its own survival as an academic institution.

32. Foxx explicitly demonstrated viewpoint discrimination toward any speech or expression that opposes Israel's actions against Palestinian people and/or that asserts the human rights of the Palestinian people, and revealed her political intent to target this political speech and association.

33. Foxx and the Committee are using, and compelled Columbia to use, a definition of antisemitism that labels as bigoted and discriminatory the common and typical, and of course, First Amendment-protected criticisms people, including James, make about Israel—that it is a racist state, led by war criminals, and/or in some ways similar to Nazi Germany—even as they do not attach such negative labels and consequences when such criticism is leveled against the Palestinian people, the U.S. or other foreign governments. James challenges those definitions facially and as-applied.

34. When viewing the totality of these circumstances, it can be reasonably understood that Foxx, by her ongoing, inappropriate and surprising focus on James personally, intended to convey a threat of adverse government action against them, and against Columbia if it did not expel them.

35. Furthermore, Foxx is not immune from these claims under the Speech and Debate Clause, as her campaign, utilizing her personal social media, to get James personally expelled from Columbia is not pursuant to a valid legislative purpose, let alone any compelling government interest.

36. Foxx displayed reckless disregard of any actual incidents of antisemitism, and intended

instead that James be "exposed for the sake of exposure" based solely on the viewpoints they held.

37. Foxx's campaign against James also violates the Establishment Clause, in that it singles out not just for endorsement, but for enforcement, a single faith's claims and assertions about Palestine, and punishes those who disagree or critique these views, or advance those of other faiths.

38. While First Amendment case law establishes that violation of First Amendment is damage in itself, James has also been frightened, suffered emotional and psychological effects, lost their remaining trust in the government and Columbia, been chilled and deterred in their speech and advocacy and their freedom to associate with other like-minded people, been doxed and received death threats and hate speech, directly as a result of Foxx's wrongful actions.

## COUNT TWO

### Tortious Interference With Contract

39. Plaintiffs restate the foregoing paragraphs as if set forth fully herein.

40. Under the rule in *Tedeschi v. Wagner College*, 49 NY 652 (1980), the Columbia student code as it existed at the time that James began their studies constituted a contract between James and Columbia.

41. Foxx knew that this contract existed, given that she knew James was a student at Columbia.

42. By demanding, successfully and wrongfully, that James be expelled from Columbia (which they have been in all but name), Foxx intentionally procured the breach of Columbia's contract with James.

43. James has incurred substantial harm as a result, being forced to pause and quite possibly end their education, losing their Columbia scholarship and housing, as well as the damage to their reputation and future employment prospects of Foxx's false description of them as an antisemite.

## REQUEST FOR RELIEF

WHEREFORE, James respectfully demands that this Court issue judgment in their favor, as to the first Count, declaring, pursuant to 28 U.S.C. § 2201, that Defendants have violated James' rights to free speech under the First Amendment;  Granting a preliminary and permanent injunction, pursuant to 28 U.S.C. § 1651 (a), 42 U.S.C. § 1983, and Rule 65 of the Federal Rules of Civil Procedure, ordering Foxx (in her official capacity):to immediately cease and refrain from engaging in any conduct or activity which has the purpose or effect of interfering with James' exercise of the rights afforded to them  under the First  Amendment; as to the second Count, awarding James actual damages, in an amount to be determined by this Court at trial; and granting James such other and further relief as this Court may deem just and proper.

DATED: Amagansett, NY
 February 5, 2026

/s/ Jonathan Wallace
Jonathan Wallace
PO #728
Amagansett NY 11930
917-359-6234
jonathan.wallace80@gmail.com
Attorney for Plaintiff