## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

KHYMANI JAMES,

*Plaintiff*,

v.

Case No. 1:26-cv-00998-PAE

VIRGINIA FOXX,

*Defendant.*

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
## THE HONORABLE VIRGINIA FOXX'S MOTION TO DISMISS

MATTHEW B. BERRY
  *General Counsel*
TODD B. TATELMAN
  *Deputy General Counsel*
ANDY T. WANG
  *Associate General Counsel*
ALICIA GARTEN
  *Assistant General Counsel*

OFFICE OF GENERAL COUNSEL
U.S. HOUSE OF REPRESENTATIVES
5140 O'Neill House Office Building
Washington, D.C. 20515
(202) 225-9700 (telephone)
matthew.berry@mail.house.gov

*Counsel for Defendant the Honorable Virginia Foxx*

April 27, 2026

**TABLE OF CONTENTS**

TABLE OF CONTENTS.............................................................................................................i

TABLE OF AUTHORITIES ....................................................................................................ii

INTRODUCTION ................................................................................................................. 1

BACKGROUND ................................................................................................................... 2

ARGUMENT ....................................................................................................................... 6

I.    The Complaint Fails To Establish Subject Matter Jurisdiction ......................................... 6

    A.  Plaintiff Lacks Standing....................................................................................... 7

        1.  Plaintiff Does Not Allege a Cognizable Injury........................................... 7

        2.  Plaintiff Cannot Establish Traceability ....................................................10

        3.  Plaintiff Has Failed To Plausibly Allege Redressability .............................12

    B.  Plaintiff's Suit Is Not Ripe................................................................................. 12

    C.  The Speech or Debate Clause Bars Plaintiff's Suit .............................................. 13

        1.  The Speech or Debate Clause ................................................................. 13

        2.  Information-Gathering and the Use of That Information Are Legislative Acts ... 14

        3.  The Speech or Debate Clause Requires Dismissal of the Complaint ................... 16

    D.  Sovereign Immunity Bars Count II and the Claim for Damages.............................. 17

II.   The Complaint Fails To State a Claim Upon Which Relief Can Be Granted................... 20

    A.  Plaintiff Does Not Plausibly Allege Any Coercion ..................................................... 20

    B.  Plaintiff Cannot State a Claim for Tortious Interference with Contract ...................... 23

        1.  No Contract Exists Between Columbia and Plaintiff ......................................... 23

        2.  Representative Foxx Did Not Know About the Alleged Contract ...................... 24

        3.  Representative Foxx Did Not Intentionally Induce Columbia To Breach............ 25

CONCLUSION.................................................................................................................. 25

# TABLE OF AUTHORITIES

**Cases**                                                                                                        **Page(s)**

*Annabi v. Ocasio-Cortez*,
No. 24-cv-07367, 2026 WL 743513 (S.D.N.Y. Mar. 17, 2026) .......................................7, 8, 22

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ..........................................................................................................20

*Ass'n of Am. Physicians & Surgeons v. Schiff*,
518 F. Supp. 3d 505 (D.D.C. 2021), *aff'd*,
23 F.4th 1028 (D.C. Cir. 2022) ......................................................................................15, 17

*Bailey v. N.Y. L. Sch.*,
No. 19-3473, 2021 WL 5500078 (2d Cir. Nov 24, 2021) .......................................................24

*Barenblatt v. United States*,
360 U.S. 109 (1959) ...........................................................................................................15

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ...........................................................................................................20

*Bragg v. Jordan*,
669 F. Supp. 3d 257 (S.D.N.Y. 2023), *appeal dismissed sub nom.*
*Bragg v. Pomerantz*, No. 23-615, 2023 WL 4612976 (2d Cir. Apr. 24, 2023) .................16, 17

*Bronx Freedom Fund v. City of New York*,
No. 21-cv-10614, 2024 WL 1329172 (S.D.N.Y. Mar. 28, 2024) ..............................................7

*Brown v. City of New York*,
No. 09-cv-2337, 2010 WL 4077925 (S.D.N.Y. Oct. 13, 2010) ...............................................20

*Champagne v. United States*,
15 F. Supp. 3d 210 (N.D.N.Y. 2014) .....................................................................................18

*Contemp. Mission v. USPS*,
648 F.2d 97 (2d Cir. 1981) ...................................................................................................18

*Corning Inc. v. Shenzhen Xinhao Photoelectric Tech. Co.*,
546 F. Supp. 3d 204 (W.D.N.Y. 2021) ...............................................................................24, 25

*Curley v. Vill. of Suffern*,
268 F.3d 65 (2d Cir. 2001) ..................................................................................................10

*Davis v. Kosinsky*,
   217 F. Supp. 3d 706 (S.D.N.Y. 2016), *aff'd sub nom.*
   *Davis v. N.Y. State Bd. of Elections*, 689 F. App'x 665 (2d Cir. 2017)....................................13

*Dep't of Agric. Rural Dev. Rural Hous. Serv. v. Kirtz*,
   601 U.S. 42 (2024)....................................................................................................................18

*Diamond Alt. Energy, LLC v. EPA*,
   606 U.S. 100 (2025)..................................................................................................................12

*Doe v. McMillan*,
   412 U.S. 306 (1973)......................................................................................................14, 16, 17

*Does 1-10 v. Haaland*,
   973 F.3d 591 (6th Cir. 2020) ...................................................................................................19

*Dombrowski v. Eastland*,
   387 U.S. 82 (1967) (per curiam)..............................................................................................14

*Dorce v. City of New York*,
   2 F.4th 82 (2d Cir. 2021) ........................................................................................................7, 8

*Eastland v. U.S. Servicemen's Fund*,
   421 U.S. 491 (1975)............................................................................................................14, 15

*Equal Vote Am. Corp. v. Cong.*,
   397 F. Supp. 3d 503 (S.D.N.Y. 2019), *aff'd in part, remanded in part sub nom.*
   *Liu v. U.S. Cong.*, 834 F. App'x 600 (2d Cir. 2020)................................................................18

*Fehrenbach v. Zeldin*,
   No. 17-cv-5282, 2019 WL 1322619 (E.D.N.Y. Feb. 6, 2019),
   *report and recommendation adopted*,
   No. 17-cv-5282, 2019 WL 1320280 (E.D.N.Y. Mar. 21, 2019)...............................................19

*Frankel v. Regents of Univ. of Ca.*,
   744 F. Supp. 3d 1015 (C.D. Cal. 2024) .....................................................................................5

*Gartenberg v. Cooper Union for the Advancement of Sci. & Art*,
   765 F. Supp. 3d 245 (S.D.N.Y. 2025).......................................................................................21

*Giachetto v. Patchogue-Medford Union Free Sch. Dist.*,
   413 F. Supp. 3d 141 (E.D.N.Y. 2016) ......................................................................................22

*Gravel v. United States*,
   408 U.S. 606 (1972)..................................................................................................................14

*Harris v. McRae*,
   448 U.S. 297 (1980)..................................................................................................................20

*Havlicek v. Titus*,
  No. 24-cv-01916, 2026 WL 766091 (D. Nev. Mar. 18, 2026) ...............................................19

*Hein v. Freedom from Religion Found., Inc.*,
  551 U.S. 587 (2007) (Scalia, J., concurring) ................................................................8

*Helstoski v. Meanor*,
  442 U.S. 500 (1979).................................................................................................14

*Horne v. Flores*,
  557 U.S. 433 (2009)...................................................................................................7

*In re MTBE Prods. Liab. Litig.*,
  725 F.3d 65 (2d Cir. 2013)........................................................................................13

*Jud. Watch, Inc. v. Schiff*,
  998 F.3d 989 (D.C. Cir. 2021) ..................................................................................15

*Kennedy v. Warren*,
  66 F.4th 1199 (9th Cir. 2023) ...................................................................................21

*Khalil v. Trs. of Columbia Univ. in N.Y.C.*,
  No. 25-cv-02079, 2026 WL 775813 (S.D.N.Y. March 19, 2026) .....................................17, 25

*Lacewell v. Off. of Comptroller of Currency*,
  999 F.3d 130 (2d Cir. 2021)......................................................................................13

*Laird v. Tatum*,
  408 U.S. 1 (1972)......................................................................................................8

*Larson v. Domestic & Foreign Com. Corp.*,
  337 U.S. 682 (1949)..................................................................................................19

*Lewis v. Clarke*,
  581 U.S. 155 (2017).............................................................................................18, 19

*Lujan v. Defs. of Wildlife*,
  504 U.S. 555 (1992)........................................................................................7, 8, 10, 11

*McSurely v. McClellan*,
  553 F.2d 1277 (D.C. Cir. 1976) (en banc)...................................................................15

*Medtech Prods. Inc. v. Ranir, LLC*,
  596 F. Supp. 2d 778 (S.D.N.Y. 2008)......................................................................23, 24

*Nungesser v Columbia Univ.*,
  169 F. Supp. 3d 353 (S.D.N.Y. 2016).........................................................................24

iv

*NRA v. Vullo*,
  602 U.S. 175 (2024)........................................................................................................21

*Odermatt v. Way*,
  188 F. Supp. 3d 198 (E.D.N.Y. 2016), *aff'd sub nom.*
  *Odermatt v. N.Y.C. Dep't of Educ.*, 694 F. App'x 842 (2d Cir. 2017) ...................................22

*Papasan v. Allain*,
  478 U.S. 265 (1986).........................................................................................................20

*Roche Diagnostics GmbH v. Enzo Biochem, Inc.*,
  992 F. Supp. 2d 213 (S.D.N.Y. 2013)...............................................................................24

*SEC v. Comm. on Ways & Means of the U.S. House of Representatives*,
  161 F. Supp. 3d 199 (S.D.N.Y. 2015)...............................................................................18

*Senate Permanent Subcomm. on Investigations v. Ferrer*,
  856 F.3d 1080 (D.C. Cir. 2017)..................................................................................15, 16

*Simon v. E. Ky. Welfare Rts. Org.*,
  426 U.S. 26 (1976)...........................................................................................................10

*Spokeo, Inc. v. Robins*,
  578 U.S. 330 (2016)...............................................................................................7, 8, 12

*Susan B. Anthony List v. Driehaus*,
  573 U.S. 149 (2014)...........................................................................................................7

*Tampa Bay Students for a Democratic Soc'y v. Rhea Law*,
  No. 25-cv-02752, 2026 WL 979964 (M.D. Fla. Apr. 10, 2026)...........................................9

*Tanvir v. Tanzin*,
  894 F.3d 449 (2d Cir. 2018), *aff'd,*
  592 U.S. 43 (2020)...........................................................................................................18

*Taylor v. Bernanke*,
  No. 13-cv-1013, 2013 WL 4811222 (E.D.N.Y. Sept. 9, 2013) ...........................................11

*Trump v. Mazars USA, LLP*,
  591 U.S. 848 (2020).........................................................................................................17

*United States v. Biaggi*,
  853 F.2d 89 (2d Cir. 1988)...............................................................................................15

*United States v. Brewster*,
  408 U.S. 501 (1972).........................................................................................................14

*United States v. Carroll*,
    667 F.3d 742 (6th Cir. 2012) ...........................................................................................12

*Watkins v. United States*,
    354 U.S. 178 (1957).........................................................................................................15

*Zherka v. DiFiore*,
    412 F. App'x 345 (2d Cir. 2011) .......................................................................................8

**Legislative Authorities**

Rules of the House of Representatives,
    119th Cong. (2025), https://perma.cc/QD7D-WRAX

    House Rule X.1(e) .........................................................................................................3

    House Rule X.2(a)-(b) ...................................................................................................3

Staff of H. Comm. on Education and the Workforce, 118th Cong., Rep. on
    Antisemitism on College Campuses Exposed (Comm. Print. 2024) (Staff
    Report), https://perma.cc/268S-8FPZ ......................................................................4, 23

**Constitution**

U.S. Const. art. I, § 5, cl. 2............................................................................................................3

U.S. Const. art. I, § 6, cl. 1..........................................................................................................13

**Statutes & Rules**

28 U.S.C. § 2675(a) .....................................................................................................................18

42 U.S.C. § 2000d.........................................................................................................................21

Fed. R. Civ. P. 9(f)........................................................................................................................10

**Other Authorities**

Compl., *James v. Columbia Univ.*,
    No. 655038/2024 (N.Y. Sup. Ct. Sept. 27, 2024)..........................................................4, 5, 10

Compl., *James v. Columbia Univ.*,
    No. 659085/2025 (N.Y. Sup. Ct. Oct. 13, 2025) .......................................................4, 6, 10, 11

John F. Kennedy, 35th President of the United States,
    Special Message to the Congress on Civil Rights and Job Opportunities (June 19, 1963),
    https://perma.cc/8UEZ-C665 .......................................................................................3

Joseph Zuloaga *et al.*, *How Columbia came to be reliant on federal funding*,
     Columbia Spectator (Nov. 9, 2025, 8:45 PM), https://perma.cc/G3BC-GQBW.......................2

Judy Goldstein & Joseph Zuloaga,
     *In Focus: The first 24 hours of the 'Gaza Solidarity Encampment,'*
     Columbia Spectator (Apr. 18, 2024, 10:20 PM), https://perma.cc/FXL2-ZUZ6 ......................2

Khymani James (@KhymaniJames),
     *X* (Sept. 10, 2025, 10:32 PM), https://perma.cc/H3L3-E6HB .............................................9, 10

Khymani James (@KhymaniJames),
     *X* (Feb. 5, 2026, 6:28 PM), https://perma.cc/6X47-HM69 .......................................................9

Khymani James (@KhymaniJames),
     *X* (Feb. 5, 2026, 10:14 PM), https://perma.cc/C88X-YPC3 ......................................................9

Khymani James (@KhymaniJames),
     *X* (Feb. 6, 2026, 9:53 AM), https://perma.cc/7NNW-FVK3 .....................................................9

Letter from Rep. Virginia Foxx, Chairwoman, H. Comm. on Educ. and the Workforce,
     to Dr. Minouche Shafik, President, Columbia Univ., et al. (Feb. 12, 2024)
     (February 12 Letter), https://perma.cc/H5G9-H8HH ...........................................................2, 3

Mem. of Law in Supp. of Def.'s Mot. to Dismiss the Compl.,
     *James v. Columbia Univ.*, No. 659085/2025 (N.Y. Sup. Ct. Dec. 17, 2025) ........................6, 9

Mem. of Law in Supp. of Def. Trustees of Columbia Univ. in the City of New York's
     Mot. to Dismiss the Compl.,
     *James v. Columbia Univ.*, No. 655038/2024 (N.Y. Sup. Ct. Dec. 4, 2024) ....................4, 5, 25

News Release, U.S. Dep't of Def.,
     Statement by Secretary of Defense Lloyd J. Austin III Marking One Year
     Since Hamas' October 7th Terrorist Assault on the State of Israel (Oct. 7, 2024),
     https://perma.cc/42QC-FJZ2....................................................................................................2

Shoshana Aufzien (@shoshanaaufzien),
     *X* (Feb. 6, 2026, 8:30 AM), https://perma.cc/2Q96-BCUW ....................................................9

Statement from Columbia University President Minouche Shafik (Apr. 29, 2024),
     https://president.columbia.edu/news/statement-columbia-university-president-minouche-
     shafik-4-29 .............................................................................................................................2

**INTRODUCTION**

In the aftermath of the October 7, 2023 terrorist attacks in Israel, a wave of antisemitism swept over our nation's college campuses, leading to discrimination against Jewish students at institutions of higher education receiving billions of dollars in federal funds.  Plaintiff Khymani James was suspended by Columbia University for one year in August 2024 for partaking in this troubling trend and doing so in a threatening manner.  According to Columbia, Plaintiff posted on Instagram in November 2023: "Zionists … I don't fight to injure … I fight to k***[.]  See yall in New York [] January 2024 []."  When Columbia set up a virtual meeting with Plaintiff to discuss the post, James surreptitiously livestreamed it.  During the livestream, James stated "[t]here should not be Zionists anywhere.  Zionists are Nazis," that "the world is better without them," and that the audience should "be grateful that I'm not just going out and murdering Zionists."  After that, in April 2024, Plaintiff physically prevented other students from entering campus grounds that contained an encampment.  Plaintiff was given a chance to end the suspension in August 2025, but doubled down, stating that "[a]nything I said, I meant it."  Columbia thus extended James's suspension for another year.

Rather than take accountability, Plaintiff points the finger at others.  Plaintiff has already filed two lawsuits against Columbia, blaming the university for the suspension and its renewal.  Now, James is blaming Representative Virginia Foxx, primarily relying on a tweet that she posted in September 2025.  Plaintiff's suit is meritless.  Because Plaintiff's predicament is a result of Plaintiff's own actions, and the suit is barred by two separate immunity doctrines (Speech or Debate Clause and Sovereign Immunity), Plaintiff faces insurmountable jurisdictional obstacles.  Furthermore, Plaintiff does not, and cannot, plausibly allege claims rooted in either the First Amendment or tortious interference with contract.

1

**BACKGROUND**

On October 7, 2023, Hamas terrorists attacked Israel, killing over a thousand innocent civilians and taking hundreds hostage.[1]  Rather than supporting their beleaguered and bereaved Jewish classmates, many Columbia students besieged them.  Beginning after the October 7 attacks, a series of antisemitic incidents rocked the campus, as outlined in a February 12, 2024 letter sent by Representative Virginia Foxx, then Chair of the Committee on Education and the Workforce of the U.S. House of Representatives (Committee), to Columbia.[2]  On April 17, 2024, a "Gaza Solidarity Encampment" illegally formed on Columbia's campus.[3]  In the words of Columbia's then-President Dr. Minouche Shafik, those involved in the encampment "created an unwelcoming environment for many of our Jewish students and faculty … [and] contributed to creating a hostile environment in violation of Title VI [of the Civil Rights Act of 1964]."[4]

Columbia is a recipient of federal grants and contracts.[5]  As President John F. Kennedy stated in calling for the enactment of the Civil Rights Act of 1964:

> justice requires that public funds, to which all taxpayers of all races contribute, not be spent in any fashion which encourages, entrenches, subsidizes, or results in racial

---

[1] News Release, U.S. Dep't of Def., Statement by Secretary of Defense Lloyd J. Austin III Marking One Year Since Hamas' October 7th Terrorist Assault on the State of Israel (Oct. 7, 2024), https://perma.cc/42QC-FJZ2.

[2] Letter from Rep. Virginia Foxx, Chairwoman, H. Comm. on Educ. and the Workforce, to Dr. Minouche Shafik, President, Columbia Univ., et al. at 3 (Feb. 12, 2024) (February 12 Letter), https://perma.cc/H5G9-H8HH.

[3] Judy Goldstein & Joseph Zuloaga, *In Focus: The first 24 hours of the 'Gaza Solidarity Encampment,'* Columbia Spectator (Apr. 18, 2024, 10:20 PM), https://perma.cc/FXL2-ZUZ6.

[4] Statement from Columbia University President Minouche Shafik (Apr. 29, 2024), https://president.columbia.edu/news/statement-columbia-university-president-minouche-shafik-4-29.

[5] Joseph Zuloaga *et al.*, *How Columbia came to be reliant on federal funding*, Columbia Spectator (Nov. 9, 2025, 8:45 PM), https://perma.cc/G3BC-GQBW.

discrimination.  Direct discrimination by Federal, State, or local governments is prohibited by the Constitution.  But indirect discrimination, through the use of Federal funds, is just as invidious; and it should not be necessary to resort to the courts to prevent each individual violation.[6]

In response to the numerous antisemitic incidents that have occurred on America's college campuses, and to ensure that Jewish students do not have to "resort to the courts" just so that they can freely and safely attend class, the Committee began investigating antisemitism in higher education which, of course, includes Columbia's handling of such incidents.[7]

It is against this backdrop that the Committee sent the February 12 Letter requesting information relating to antisemitic incidents that occurred on Columbia's campus and how Columbia had responded to them.  February 12 Letter at 11-16.  As the Committee explained, the requested information would "assist the Committee in understanding antisemitism at Columbia and the university's response to it," and "[u]nder House Rule X, the Committee has legislative and oversight jurisdiction over 'education ... generally.'"  *Id*. at 11, 16 (citation omitted).  In response to this and additional requests for information, Columbia produced documents.

On October 31, 2024, Committee staff released a report, "Antisemitism on College

---

[6] John F. Kennedy, 35th President of the United States, Special Message to the Congress on Civil Rights and Job Opportunities (June 19, 1963), https://perma.cc/8UEZ-C665.

[7] Pursuant to the Constitution's Rulemaking Clause, U.S. Const. art. I, § 5, cl. 2, the House has delegated its extensive legislative powers related to education to the Committee.  *See* Rule X.1(e), Rules of the House of Representatives, 119th Cong. (2025) (House Rules), https://perma.cc/QD7D-WRAX.  House Rules also delegate to the Committee "general oversight responsibilities" intended to enable it "to assist the House in" reviewing "the application, administration, execution, and effectiveness of Federal laws," "conditions and circumstances that may indicate the necessity or desirability of enacting new or additional legislation," and the "formulation, consideration and enactment of changes in Federal laws."  House Rule X.2(a)-(b).  These rules are identical to those in place during the 118th Congress, when the Committee initiated its investigation of Columbia.

Campuses Exposed," which included information gleaned from records sent by Columbia.[8]  The

Staff Report explained "the Committee's interest [was] in ensuring colleges and universities

comply with Title VI," and that "the Committee's investigation will inform potential legislative

reforms to existing federal law" because the "outbreak of vicious antisemitism in postsecondary

education" "is a 'subject on which legislation "could be had."'"  *Id.* at 7 (citations omitted).  The

Staff Report extensively documented the pervasive antisemitism infecting Columbia and other

college campuses, notably concluding that the "totality of circumstances on these campuses

demonstrate an environment hostile to Jewish students likely in violation of Title VI."  *Id*. at 122.

In this case, Plaintiff alleges that Representative Foxx jawboned Columbia into

suspending Plaintiff.  The Complaint, however, omits nearly every single pertinent detail about

Plaintiff's suspension, including when the suspension happened.  But since James previously

sued Columbia twice over these same allegations,[9] the pleadings in those cases supply the

necessary facts that the instant Complaint lacks.  According to those pleadings, Plaintiff was a

Columbia student in November 2023 when Plaintiff posted on Instagram: "Zionists in my …

[direct messages] wanting to meet up and fight lol. I don't fight to injure or for there to be a

'winner' / 'loser'.  I fight to k***.  See yall in New York [] January 2024 []."  Mem. of Law in

Supp. of Def. Trustees of Columbia Univ. in the City of New York's Mot. to Dismiss the Compl.

at 2, *James v. Columbia Univ.*, No. 655038/2024 (N.Y. Sup. Ct. Dec. 4, 2024).  Columbia

scheduled a virtual meeting with Plaintiff on January 9, 2024, to discuss that threatening post.

*Id*. at 3.  At the meeting, Plaintiff surreptitiously livestreamed it and said "[t]here should not be

---

[8] *See* Staff of H. Comm. on Educ. and the Workforce, 118th Cong., Rep. on Antisemitism on College Campuses Exposed (Comm. Print. 2024) (Staff Report), https://perma.cc/268S-8FPZ.

[9] *See* Compl., *James v. Columbia Univ.*, No. 655038/2024 (N.Y. Sup. Ct. Sept. 27, 2024) and Compl., *James v. Columbia Univ.*, No. 659085/2025 (N.Y. Sup. Ct. Oct. 13, 2025).

Zionists anywhere," "Zionists are Nazis," that "the world is better without them," and that the audience should "be grateful that I'm not just going out and murdering Zionists." *Id*. at 3-4. In April 2024, Columbia placed Plaintiff on probation due to James's unauthorized recording of and use of "denigrat[ing]" language during the January 9 meeting. *Id*. at 4.

Subsequently, on April 21, during the encampment that Columbia's President admitted violated Title VI, "Plaintiff and others formed a 'human chain' to physically prevent [three] students from accessing the area taken over by the encampment. Videos … show Plaintiff leading the effort to exclude the other students, telling fellow protestors: 'Attention, everyone. Can I get everyone to form a human chain right here? …We have Zionists who have entered the camp.'" *Id*. at 5-6 (citations omitted). As a result of this additional act, in August 2024, Columbia suspended Plaintiff for one year.[10] *Id*. at 6. Plaintiff then sued Columbia in New York state court in September 2024 over the suspension. Compl., *James v. Columbia Univ.*, No. 655038/2024 (N.Y. Sup. Ct. Sept. 27, 2024). Notably, in that complaint, James pointed the finger at Columbia and a "*Daily Wire* [news] article" that publicized Plaintiff's live streaming of the January 9 meeting with Columbia, which "led to national media attention, [thus] pressur[ing] … the Columbia administration to suspend or expel James." *Id*. ¶¶ 37-38.

In August 2025, Plaintiff's suspension was extended for another year. "Columbia reasonably exercised [its] discretion and determined that Plaintiff was not ready to return to campus in the Fall 2025 semester—in part due to Plaintiff's statement that he 'meant it' when he said that 'Zionists do not deserve to live' and to '[b]e grateful that I'm not just going out and

---

[10] At least one court has ruled that universities cannot allow students to be excluded from parts of campus in connection with similar protests. *See, e.g.*, *Frankel v. Regents of Univ. of Ca.*, 744 F. Supp. 3d 1015, 1028 (C.D. Cal. 2024) (enjoining UCLA from allowing Jewish students to be excluded from "ordinarily available portions of UCLA's … campus areas").

murdering Zionists.'"  Mem. of Law in Supp. of Def.'s Mot. to Dismiss the Compl. at 1, *James v. Columbia Univ.*, No. 659085/2025 (N.Y. Sup. Ct. Dec. 17, 2025).  Plaintiff sued Columbia again, this time over the suspension extension.  Compl., *James v. Columbia Univ.*, No. 659085/2025 (N.Y. Sup. Ct. Oct. 13, 2025).  In that complaint, while Plaintiff again blamed Columbia, Plaintiff also alleged that multiple elected officials pressured Columbia to "expel James."  *Id*. ¶¶ 61-64.  Plaintiff identified a tweet posted by Representative Foxx on September 12, 2025, as an example of the "federal government … pressur[ing] Columbia explicitly and by name to expel James."  *Id*. ¶¶ 67-68.  The tweet reads:

> When I was Chair of the @EdWorkforceCmte the leadership at @Columbia made a direct statement to me that Khymani James would be expelled for his antisemitic rhetoric - my committee staff at the time were present as well when the statement was made.  He was not expelled.  Nothing was done.  @Columbia you have failed again, again, and again.

*Id*. ¶ 67.

That brings us to James's third lawsuit.  Although unclear, Plaintiff appears to allege that the September 12 tweet (and perhaps also the February 12 Letter and the Staff Report) were attempts by Representative Foxx "to get James expelled."  ECF No. 1 ¶ 30.  The Complaint alleges two counts: first, that Representative Foxx violated the First Amendment by jawboning Columbia into expelling Plaintiff; and second, that this constitutes tortious interference with contract.  *Id*. at 5-7.  Plaintiff seeks declaratory and injunctive relief, as well as damages.  *Id*. at 8.  For the reasons below, Plaintiff's threadbare Complaint is meritless and should be dismissed.

## ARGUMENT

The Complaint should be dismissed for lack of subject matter jurisdiction and because it does not state a claim upon which relief can be granted.

### I.    The Complaint Fails To Establish Subject Matter Jurisdiction

The Court lacks subject matter jurisdiction for four reasons.  *First*, Plaintiff lacks

6

standing. *Second*, Plaintiff's suit is not ripe. *Third*, the Speech or Debate Clause absolutely shields Representative Foxx from this suit. And *fourth*, sovereign immunity bars Plaintiff's tortious interference with contract claim as well as James's claim for damages.

### A.    Plaintiff Lacks Standing

The "threshold issue of standing [is] 'an essential and unchanging part of the case-or-controversy requirement of Article III,'" and must be met for a court's jurisdiction to vest. *Horne v. Flores*, 557 U.S. 433, 445 (2009) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)). To establish standing, "[t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). "[T]he party invoking federal jurisdiction[] bears the burden of establishing these elements." *Id*. Plaintiff has failed to meet this burden.

### 1.    Plaintiff Does Not Allege a Cognizable Injury

When seeking injunctive relief, "a plaintiff cannot meet the injury-in-fact requirement merely by relying on past injury." *Bronx Freedom Fund v. City of New York*, No. 21-cv-10614, 2024 WL 1329172, at *5 (S.D.N.Y. Mar. 28, 2024). Instead, a plaintiff must "show a 'prospective injury' which 'is real, immediate, and direct.'" *Annabi v. Ocasio-Cortez*, No. 24-cv-07367, 2026 WL 743513, at *5 (S.D.N.Y. Mar. 17, 2026) (citation omitted). "Such an allegation of future injury will be sufficient only if 'the threatened injury is certainly impending, or there is a substantial risk that the harm will occur.'" *Dorce v. City of New York*, 2 F.4th 82, 95 (2d Cir. 2021) (quoting *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014)). "The risk of possible future injury, on the other hand, is not sufficient." *Annabi*, 2026 WL 743513, at *5 (quotation marks and citation omitted).

Here, while unclear, Plaintiff appears to allege the injury was being suspended or "de

7

facto" expelled from Columbia.  ECF No. 1 ¶¶ 1, 16, 17, 24.  But this is "prototypically [a] 'past injur[y]' that [is] insufficient to establish the risk of harm necessary for injunctive relief." *Annabi*, 2026 WL 743513, at *6 (quoting *Dorce*, 2 F.4th at 95).  Indeed, Plaintiff has not pled anything to suggest that Representative Foxx will take any adverse action against Plaintiff in the future, and Plaintiff's cursory and unsupported "expect[ation] that Columbia, in fear of Foxx and the Committee, will deny permission again" when Plaintiff re-applies for admission in April 2026, ECF No. 1 ¶ 17, is an "[in]adequate[] alleg[ation of] a risk of future harm," *Annabi*, 2026 WL 743513, at *6 (quoting *Dorce*, 2 F.4th at 96).

To the extent Plaintiff alleges other injuries, they fare no better.  Plaintiff mentions being "frightened," "suffer[ing from] emotional and psychological effects," and "los[ing] … trust in the government and Columbia," ECF No. 1 ¶ 38, but because of the perfunctory nature of the allegations, they fail to meet the basic elements necessary to establish standing, *see Spokeo*, 578 U.S. at 339 ("To establish injury in fact, a plaintiff must show … 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" (quoting *Lujan*, 504 U.S. at 560)); *see also Hein v. Freedom from Religion Found., Inc.*, 551 U.S. 587, 619-20 (2007) (Scalia, J., concurring) (explaining that "[p]sychic [i]njury" that consists of an individual's "mental displeasure" is insufficiently "concrete and particularized" to confer standing).

Finally, Plaintiff mentions having "been chilled and deterred in their speech and advocacy and their freedom to associate," ECF No. 1 ¶ 38, but "[a]llegations of a subjective 'chill' are not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm" for Article III standing, *Laird v. Tatum*, 408 U.S. 1, 13-14 (1972); *Zherka v. DiFiore*, 412 F. App'x 345, 347 (2d Cir. 2011) ("Under the First Amendment, a plaintiff must

show more than a mere subjective 'chilling' effect on his speech." (citation omitted)).  Plaintiff

does not allege a single event Plaintiff was or will be forced to skip, or a single thing that

Plaintiff did not or cannot say because of this alleged chilling.  *See Tampa Bay Students for a*

*Democratic Soc'y v. Rhea Law*, No. 25-cv-02752, 2026 WL 979964, at *9 (M.D. Fla. Apr. 10,

2026) ("[T]he complaint [fails to] allege a definite plan to engage in specific expressive activity

at a fixed time and place, but only [Plaintiff's] generalized 'desire' to participate in 'SDS events

on campus' and [Plaintiff's] speculative fear of 'arrest and prosecution.'  'Such "some day"

intentions — without any description of concrete plans, or even any specification of when the

some day will be — do not support a finding of the "actual or imminent" injury that our cases

require.'" (citations omitted)).  In fact, Columbia has explained in state court that it decided not

to lift Plaintiff's suspension precisely because Plaintiff was undeterred, was unapologetic, and

continued posting inflammatory remarks.  *See* Mem. of Law in Supp. of Def.'s Mot. to Dismiss

the Compl. at 4, *James v. Columbia Univ.*, No. 659085/2025 (N.Y. Sup. Ct. Dec. 17, 2025)

("Plaintiff had issued a post on social media, reaffirming inflammatory comments Plaintiff had

made earlier in the year and disavowing an apology for those comments.").[11]

---

[11] Moreover, shortly after the Complaint was filed, Plaintiff took to X.com, tagged
Representative Foxx's official account, and tweeted: "don't die yet, I'm suing you," along with a
screenshot of the Complaint.  Khymani James (@KhymaniJames), *X* (Feb. 5, 2026, 6:28 PM),
https://perma.cc/6X47-HM69.  Plaintiff also replied to Representative Foxx's statement on the
case with a statement of Plaintiff's own: "This geriatric lacks all common sense and needs to ___
.  But NOT before we go to court."  Khymani James (@KhymaniJames), *X* (Feb. 5, 2026, 10:14
PM), https://perma.cc/C88X-YPC3.  At least one X user interpreted Plaintiff as saying that
Representative Foxx "needs to [die]."  Shoshana Aufzien (@shoshanaaufzien), *X* (Feb. 6, 2026,
8:30 AM), https://perma.cc/2Q96-BCUW.  In response to blowback, Plaintiff tweeted: "I WILL
use my freedom of speech to say exactly what I want about a politician who was sitting in
meetings plotting on me & NOBODY can check me."  Khymani James (@KhymaniJames), *X*
(Feb. 6, 2026, 9:53 AM), https://perma.cc/7NNW-FVK3.  This is consistent with a past tweet
where Plaintiff stated: "not a single soul or entity will EVER check me for what the fuck *I* post
on MY twitter."  Khymani James (@KhymaniJames), *X* (Sept. 10, 2025, 10:32 PM),

## 2.  Plaintiff Cannot Establish Traceability

Traceability requires the injury "to be 'fairly … trace[able] to the challenged action of the defendant, and not … th[e] result [of] the independent action of some third party not before the court.'"  *Lujan*, 504 U.S. at 560 (1992) (alterations in original) (quoting *Simon v. E. Ky. Welfare Rts. Org.*, 426 U.S. 26, 41-42 (1976)).  Plaintiff cannot plausibly allege that Representative Foxx's tweet had any effect on decisions that Columbia independently made before the tweet.

*First*, the claim that Representative Foxx's tweet was an attempt to jawbone Columbia into suspending and not re-admitting Plaintiff fails chronologically.  The Complaint states that Plaintiff was suspended "in 2024" without further specifying when it took place.  ECF No. 1 ¶ 2.[12]  Plaintiff's second *state court* complaint clarifies that Plaintiff was suspended in August 2024, and the suspension was extended in August 2025.  *See* Compl. ¶¶ 5, 8, 42, *James v. Columbia Univ.*, No. 659085/2025 (N.Y. Sup. Ct. Oct. 13, 2025).  Given that the tweet was posted in September 2025, Plaintiff cannot plausibly allege the tweet had any impact on these decisions.  In fact, in Plaintiff's first state court complaint, Plaintiff alleges that on "December 13, 2023, James received a letter from Columbia[] … informing him of a potential violation of University policy," which was the beginning of Columbia's investigation of Plaintiff.  Compl. ¶ 8, *James v. Columbia Univ.*, No. 655038/2024 (N.Y. Sup. Ct. Sept. 27, 2024).  Thus, Columbia began investigating Plaintiff months before the start of the Committee's investigation into

---

https://perma.cc/H3L3-E6HB.  For a plaintiff "[t]o prevail on this free speech claim, plaintiff must prove," among other things, that "defendant['s] actions effectively chilled the exercise of [plaintiff's] First Amendment right."  *Curley v. Vill. of Suffern*, 268 F.3d 65, 73 (2d Cir. 2001).  Plaintiff's own posts bely any possible chilling argument here.

[12] That the Complaint does not specify when exactly Plaintiff was suspended demonstrates that it is insufficiently pled.  *See* Fed. R. Civ. P. 9(f) ("An allegation of time or place is material when testing the sufficiency of a pleading.").

Columbia in the 118th Congress, and over a year before the tweet in question was posted. This suggests that Plaintiff's "[s]elf-inflicted injury … results from a plaintiff's personal choices rather than … defendant's conduct[, which] will not confer standing." *Taylor v. Bernanke*, No. 13-cv-1013, 2013 WL 4811222, at *10 n.5 (E.D.N.Y. Sept. 9, 2013).

*Second*, even if the Complaint is interpreted to concern the alleged statement that Columbia made to Representative Foxx referenced in the tweet, as opposed to the tweet itself, the tweet cannot plausibly be read to suggest that Representative Foxx asked Columbia to do anything. The tweet merely states that Columbia informed Representative Foxx that Columbia would expel Plaintiff, not that Representative Foxx asked (or demanded) Columbia to do anything. And to the extent the tweet implies that there were prior meetings or communications between Representative Foxx and Columbia, the Complaint alleges nothing to support such an inference, nor does it allege what those meetings or communications were, when or where they happened, or how they played a role in the disciplinary actions Columbia took against Plaintiff.

*Third*, the Complaint concedes that the suspension and its subsequent extension were Columbia's doing. *See* ECF No. 1 ¶ 16 (referring to Plaintiff's "suspension by Columbia"). In fact, the Complaint states that the suspension was extended because of "rules *unilaterally* changed by Columbia." *Id*. ¶ 17 (emphasis added). This is consistent with how Plaintiff described events in the second state court case against Columbia: "Columbia *unilaterally* and in bad faith revised the student code after suspending James, in a way which made it more difficult or impossible for him to return." Compl. ¶ 78, *James v. Columbia Univ.*, No. 659085/2025 (N.Y. Sup. Ct. Oct. 13, 2025) (emphasis added). Given these admissions, Plaintiff has failed to plausibly plead traceability because Plaintiff's past injury "is th[e] result [of] the independent action of some third party not before the court." *Lujan*, 504 U.S. at 560 (alterations in original).

11

*Finally*, the Complaint mentions how Plaintiff's suspension was extended shortly after Columbia's settlement with the Executive Branch.  ECF No. 1 ¶¶ 15, 17.  Aside from the fact this is all unsupported innuendo, Plaintiff performs a sleight of hand and attempts to impute the actions of a separate and distinct branch of government onto Representative Foxx.  Even assuming the truth of this allegation, it only means that Columbia's past conduct may have been impacted by a third party not before the court rather than Representative Foxx.

### 3.     Plaintiff Has Failed To Plausibly Allege Redressability

"[C]ausation and redressability, are usually 'flip sides of the same coin.'"  *Diamond Alt. Energy, LLC v. EPA*, 606 U.S. 100, 111 (2025) (citation omitted).  Thus, "[r]edressability and causation problems often go hand in hand," and because Representative Foxx did not cause the injury to Plaintiff, the injury is also not redressable through a judgment against Representative Foxx.  *See United States v. Carroll*, 667 F.3d 742, 745-46 (6th Cir. 2012).  As explained above, the alleged injury is how "[Representative] Foxx has wrongfully succeeded in procuring James' de facto expulsion from Columbia."  ECF No. 1 ¶ 24.  But the relief sought will not redress Plaintiff's suspension or "de facto expulsion."  Indeed, this court cannot order Columbia, a non-party, to reinstate James, nor is there any indication that a judgment in Plaintiff's favor would result in James's return to campus.

Finally, as explained below, the Speech or Debate Clause absolutely protects Representative Foxx's right to request and use information.  Thus, as a matter of law, Plaintiff cannot demonstrate that Plaintiff's alleged injury is "likely to be redressed by a favorable judicial decision."  *Spokeo*, 578 U.S. at 338.

### B.     Plaintiff's Suit Is Not Ripe

"[R]ipeness 'prevents a federal court from entangling itself in abstract disagreements

12

over matters that are premature for review because the injury is merely speculative and may never occur.'" *In re MTBE Prods. Liab. Litig.*, 725 F.3d 65, 110 (2d Cir. 2013) (citation omitted). Crucially, "ripeness 'overlaps with the standing doctrine … in the shared requirement that the plaintiff's injury be imminent rather than conjectural or hypothetical.'" *Lacewell v. Off. of Comptroller of Currency*, 999 F.3d 130, 149 (2d Cir. 2021) (citation omitted). Here, as explained above, while the Complaint alleges a past injury (the suspension), it fails to allege an imminent or impending future injury. Any claim that Plaintiff will not be reinstated by Columbia is not ripe for review.

Plaintiff concedes that another application for readmission is possible in April 2026. ECF No. 1 ¶ 17. And while Plaintiff "expects" that Columbia will deny this request, that has not yet occurred and may never occur. *Id*. Plaintiff offers no support for this "expect[ation]" other than subjective belief. But a "plaintiff must allege something more than an abstract, subjective fear that his rights are chilled in order to establish a case or controversy." *Davis v. Kosinsky*, 217 F. Supp. 3d 706, 710 (S.D.N.Y. 2016) (citation omitted), *aff'd sub nom. Davis v. N.Y. State Bd. of Elections*, 689 F. App'x 665 (2d Cir. 2017). Indeed, "[i]f the Court were to engage in conjecture and assume this would occur, it would 'entangl[e] itself in abstract disagreements'" between Columbia and Plaintiff. *Id*. at 712 (citation omitted).

### C.    The Speech or Debate Clause Bars Plaintiff's Suit

The Speech or Debate Clause absolutely bars Plaintiff's suit and the requested relief. Because of this core constitutional immunity, the Complaint must be dismissed.

#### 1.  The Speech or Debate Clause

The Clause mandates that "for any Speech or Debate in either House, [Senators and Representatives] shall not be questioned in any other Place." U.S. Const. art. I, § 6, cl. 1. By

13

"freeing the legislator from executive and judicial oversight that realistically threatens to control his conduct," *Gravel v. United States*, 408 U.S. 606, 618 (1972), the Clause both "preserve[s] the independence and ... integrity of the legislative process," *United States v. Brewster*, 408 U.S. 501, 524 (1972), and "reinforc[es] the separation of powers," *Eastland v. U.S. Servicemen's Fund*, 421 U.S. 491, 502 (1975) (citation omitted).  The Clause's absolute immunity extends to all civil actions.  *See id*. at 503.  And it protects legislators "not only from the consequences of litigation's results but also from the burden of defending themselves."  *Dombrowski v. Eastland*, 387 U.S. 82, 85 (1967) (per curiam).  Because the Clause's "guarantees … are vitally important to our system of government," they must be "treated by the courts with the sensitivity that such important values require."  *Helstoski v. Meanor*, 442 U.S. 500, 506 (1979).

Accordingly, the Supreme Court has "[w]ithout exception, … read the … Clause broadly to effectuate its purposes."  *Eastland*, 421 U.S. at 501.  The Speech or Debate Clause provides, among other things, immunity for all actions "within the 'legislative sphere.'"  *Doe v. McMillan*, 412 U.S. 306, 312 (1973) (quoting *Gravel*, 408 U.S. at 624-25).  And the Supreme Court has stated unequivocally that when the challenged "actions of [legislators] fall within the sphere of legitimate legislative activity," they "shall not be questioned in any other Place about those activities since the prohibitions of the Speech or Debate Clause are absolute."  *Eastland*, 421 U.S. at 501 (internal quotation marks and citation omitted); *see also id.* at 503, 509 n.16, 509-10.

### 2.  Information-Gathering and the Use of That Information Are Legislative Acts

The types of "legislative activity" protected by the Speech or Debate Clause include much more than just speaking or debating on the House floor.  The "cases have plainly not taken a literalistic approach in applying the privilege. … Committee reports, resolutions, and the act of voting are equally covered… ."  *Gravel*, 408 U.S. at 617.  Relevant here, the Supreme Court has

14

found that the "power to investigate" is within the legitimate legislative sphere.  *See Eastland*, 421 U.S. at 504.  That is so because a "legislative body cannot legislate wisely or effectively in the absence of information respecting the conditions which the legislation is intended to affect or change."  *Id*. (citation omitted).  To formulate legislation, or to understand the topics debated in Congress, legislators must have all relevant information.  And thus, the "power of the Congress to conduct investigations is inherent in the legislative process."  *Watkins v. United States*, 354 U.S. 178, 187 (1957).  In fact, "[t]he scope of [Congress's] power of inquiry ... is as penetrating and far-reaching as the potential power to enact and appropriate under the Constitution."  *Barenblatt v. United States*, 360 U.S. 109, 111 (1959).

Courts have consistently held that all modes of congressional information-gathering, from informal data collection to the issuance of subpoenas, are legislative acts absolutely protected by the Speech or Debate Clause.  *See, e.g.*, *Ass'n of Am. Physicians & Surgeons v. Schiff*, 518 F. Supp. 3d 505, 518 (D.D.C. 2021) ("[I]nformation gathering letters constitute protected legislative acts."), *aff'd*, 23 F.4th 1028 (D.C. Cir. 2022); *Jud. Watch, Inc. v. Schiff*, 998 F.3d 989, 992 (D.C. Cir. 2021) ("[T]he Committee's issuance of subpoenas … was a legislative act protected by the Speech or Debate Clause."); *United States v. Biaggi*, 853 F.2d 89, 102-03 (2d Cir. 1988) (legislative fact-finding during congressional trip protected by the Clause); *McSurely v. McClellan*, 553 F.2d 1277, 1286-87 (D.C. Cir. 1976) (en banc) ("The acquisition of knowledge through informal sources is a necessary concomitant of legislative conduct and thus should be within the ambit of the privilege so that congressmen are able to discharge their constitutional duties properly." (citation omitted)).

Likewise, the Speech or Debate Clause "affords Congress a 'privilege to use materials in its possession without judicial interference.'"  *Senate Permanent Subcomm. on Investigations v.*

15

*Ferrer*, 856 F.3d 1080, 1086 (D.C. Cir. 2017) (citation omitted).  For example, in *Doe v. McMillan*, a House committee investigated the Washington, D.C. public school system and published its findings in a report that "specifically named students" who had "disciplinary problems."  412 U.S. at 307-08, 308 n.1.  Parents sued to stop this, *id.* at 309-10, but the Supreme Court flatly rejected their request for an injunction, stating that "it is plain to us that the complaint in this case was barred by the Speech or Debate Clause," *id*. at 312.  As the Court explained, "[t]he Speech or Debate Clause was designed to assure a co-equal branch of the government wide freedom of speech, debate and deliberation without intimidation or threats," and the Clause "includes within its protections anything generally done in a session of the House by one of its members in relation to the business before it."  *Id*. at 311 (quotation marks and citations omitted).  As a result, the Court held that "[a]lthough we might disagree with the Committee as to whether it was necessary, or even remotely useful, to include the names of individual children in the ... Committee Report, we have no authority to oversee the judgment of the Committee in this respect."  *Id*. at 313.

### 3.  The Speech or Debate Clause Requires Dismissal of the Complaint

To the extent Representative Foxx's tweet implies that there were prior meetings or communications between her and Columbia, James does not allege that they played any role in Columbia's disciplinary actions.  But even if Plaintiff had pled such allegations, any meetings or communications between her and Columbia are legislative acts absolutely protected by the Speech or Debate Clause because they were done in furtherance of the Committee's oversight investigation of Columbia.  *See Bragg v. Jordan*, 669 F. Supp. 3d 257, 267 (S.D.N.Y. 2023) ("Congress may conduct inquiries 'into the administration of existing laws, … and … surveys of defects in our social, economic or political system for the purpose of enabling the Congress to

16

remedy them.'" (quoting *Trump v. Mazars USA, LLP*, 591 U.S. 848, 862 (2020))), *appeal dismissed sub nom. Bragg v. Pomerantz*, No. 23-615, 2023 WL 4612976 (2d Cir. Apr. 24, 2023).

Similarly, to the extent Plaintiff is alleging that the Committee's February 12 Letter and/or the Staff Report were also attempts to jawbone Columbia, both are protected legislative acts. Publication of the Committee's report is protected. *See McMillan*, 412 U.S. at 312. So too is the letter. *See Ass'n of Am. Physicians & Surgeons*, 518 F. Supp. 3d at 518. Indeed, in an earlier-filed suit where Columbia University students sued to stop Columbia from turning over student records to the Committee pursuant to another Committee letter, Judge Subramanian dismissed the Committee from the suit, holding that the "'power to investigate' is within the legislative sphere," which "includes informal letters requesting a response," and therefore the Committee was "immune from liability." *Khalil v. Trs. of Columbia Univ. in N.Y.C.*, No. 25-cv-02079, 2026 WL 775813, at *3-4 (S.D.N.Y March 19, 2026) (citations omitted).

In short, Plaintiff's request that this Court declare that Representative Foxx has violated Plaintiff's "rights to free speech under the First Amendment," ECF No. 1 at 8, is a demand for an unconstitutional declaratory judgment. Likewise, Plaintiff's request that this Court enjoin Defendant "from engaging in any conduct or activity which has the purpose or effect of interfering with [Plaintiff's] exercise of the rights afforded to them under the First Amendment," *id.*, asks this Court to issue an unconstitutional order. The Speech or Debate Clause acts as a jurisdictional bar against such requests. *See Khalil*, 2026 WL 775813, at *4.

### D.    Sovereign Immunity Bars Count II and the Claim for Damages

Plaintiff's claim of tortious interference and request for "actual damages," ECF No. 1 at 8, "ignore[s] [a] well-established rule[] that shield[s] Defendant['s] actions from jurisdiction (let alone liability)[:] … The shield of sovereign immunity protects not only the United States but

17

also its agencies and officers when the latter act in their official capacities," *Equal Vote Am. Corp. v. Cong.*, 397 F. Supp. 3d 503, 511-12 (S.D.N.Y. 2019) (quotation marks and citations omitted), *aff'd in part, remanded in part sub nom. Liu v. U.S. Cong.*, 834 F. App'x 600 (2d Cir. 2020). Sovereign immunity means that "the United States, as sovereign, is generally immune from suits seeking money damages." *Dep't of Agric. Rural Dev. Rural Hous. Serv. v. Kirtz*, 601 U.S. 42, 48 (2024). Sovereign immunity extends to "members of Congress acting in their official capacities." *SEC v. Comm. on Ways & Means of the U.S. House of Representatives*, 161 F. Supp. 3d 199, 216-17 (S.D.N.Y. 2015). And "[a]bsent a waiver, sovereign immunity shields the Federal Government and its agencies from suit." *Tanvir v. Tanzin*, 894 F.3d 449, 459 (2d Cir. 2018) (citation omitted), *aff'd*, 592 U.S. 43 (2020).

Here, Plaintiff has sued Representative Foxx in her official capacity but fails to point to any waiver of sovereign immunity. Although not pleaded, any waiver of sovereign immunity provided by the Federal Tort Claims Act would not apply. "[T]he Second Circuit … has specifically found that a claim for tortious interference with contractual rights 'is specifically barred' by Section 2680(h)." *Champagne v. United States*, 15 F. Supp. 3d 210, 225 (N.D.N.Y. 2014) (quoting *Contemp. Mission v. USPS*, 648 F.2d 97, 104 n.9 (2d Cir. 1981)). Nor has Plaintiff exhausted administrative remedies. *See* 28 U.S.C. § 2675(a). Thus, Count II and Plaintiff's claim for actual damages are barred.

While Plaintiff purports to also sue Defendant in her personal capacity, ECF No. 1 ¶ 1, that does not make it so. "[C]ourts should look to whether the sovereign is the real party in interest to determine whether sovereign immunity bars the suit. In making this assessment, courts may not simply rely on the characterization of the parties in the complaint, but rather must determine … whether the remedy sought is truly against the sovereign." *Lewis v. Clarke*, 581

18

U.S. 155, 161-62 (2017) (citation omitted); *Larson v. Domestic & Foreign Com. Corp.*, 337 U.S. 682, 687 (1949) ("[T]he crucial question is whether the relief sought in a suit nominally addressed to the officer is relief against the sovereign," not "the denomination of the party defendant by the plaintiff.").

Here, the suit clearly concerns Representative Foxx's official actions. *First*, the Complaint alleges it is "against Congressperson Virginia Foxx, who represents North Carolina's Fifth District, because she has abused her role and authority as Chairperson and member of the [Committee], and as a member of Congress generally." ECF No. 1 ¶ 1. *Second*, the tweet was posted on Representative Foxx's official account, @virginiafoxx, which is for "Congresswoman Virginia Foxx. … representing North Carolina's Fifth District," as opposed to her non-official campaign account, @foxxforcongress. *See Havlicek v. Titus*, No. 24-cv-01916, 2026 WL 766091, at *1 (D. Nev. Mar. 18, 2026) ("Because Havlicek's claims relate to Congresswoman Titus' official X account, I assume he is suing her in her official capacity as a member of Congress."). *Third*, Members' official duties include constituent communication, including through social media. *See Does 1-10 v. Haaland*, 973 F.3d 591, 602 (6th Cir. 2020) (holding that Members act within the scope of their employment when they "broadcast their views on pending legislation and related current events through press releases, televised speeches, interviews, and … through social media postings."). *Finally*, Plaintiff's First Amendment claim fails if Representative Foxx was acting in her personal capacity—there would be no First Amendment violation because there would be no state action. *See Fehrenbach v. Zeldin*, No. 17-cv-5282, 2019 WL 1322619, at *5 (E.D.N.Y. Feb. 6, 2019) (holding that the removal of a post on "Congressman Zeldin's campaign page … amounts to private action"), *report and recommendation adopted*, No. 17-cv-5282, 2019 WL 1320280 (E.D.N.Y. Mar. 21, 2019).

19

## II.    The Complaint Fails To State a Claim Upon Which Relief Can Be Granted

Even if this Court could get beyond the jurisdictional problems discussed above, the Complaint does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  Plausibility requires "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Rather, the specific allegations must "nudge[] … claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.  Although well-pleaded facts must be accepted as true, the Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986).  Here, Plaintiff fails to plausibly allege that Representative Foxx has unlawfully coerced Columbia in any way, or that she has tortiously interfered with any contract between James and Columbia.[13]

### A.    Plaintiff Does Not Plausibly Allege Any Coercion

Plaintiff alleges that Representative Foxx "has directly, admittedly intervened with Columbia to get James expelled" and that her "interventions, and those of the Committee under her leadership, so intimidated Columbia that it apparently felt compelled to comply with

---

[13] In a single sentence, Plaintiff apparently attempts to allege an Establishment Clause violation, claiming that Representative Foxx is "singl[ing] out not just for endorsement, but for enforcement, a single faith's claims and assertions about Palestine."  ECF No. 1 ¶ 37.  Setting aside what this even means, this "[t]hreadbare recital[] … supported by mere conclusory statements" is not enough to state a claim under *Twombly* and *Iqbal*.  *Brown v. City of New York*, No. 09-civ-2337, 2010 WL 4077925, at \*2 (S.D.N.Y. Oct. 13, 2010) (first alteration in original) (citation omitted).  Moreover, it substantively fails to make out a cognizable Establishment Clause violation.  The government does not violate the Establishment Clause because it takes a position that "happens to coincide … with" a religious tenet.  *See Harris v. McRae*, 448 U.S. 297, 319 (1980) ("That the Judaeo-Christian religions oppose stealing does not mean that [the] … Government may not, consistent with the Establishment Clause, enact laws prohibiting larceny.").  Here, to the extent that Representative Foxx has taken any action, it was part and parcel of the Committee's investigation in developing additional legislation that may stem the rising tide of antisemitism on college campuses.  Thus, any "coincide[nce]" between her actions and the belief system of a particular faith is just that, not an endorsement of a particular religion.

whatever Foxx ordered." ECF No. 1 ¶¶ 30-31. Plaintiff further alleges that this is "jawboning, a strategy which allows government officials to impact the speech of individuals like James, that they have no direct control over." *Id*. ¶ 29. "To state a claim that the government violated the First Amendment through coercion of a third party, a plaintiff must plausibly allege conduct that, viewed in context, could be reasonably understood to convey a threat of adverse government action in order to punish or suppress the plaintiff's speech." *NRA v. Vullo*, 602 U.S. 175, 191 (2024). Plaintiff's jawboning claim fails for several reasons.

*First*, the Complaint does not plausibly allege that Representative Foxx coerced Columbia to do anything. As discussed above, *see supra* p. 11, her tweet only references what Columbia told Representative Foxx; it does not reflect Representative Foxx telling Columbia to do anything, much less "admitting" that she intervened for the specific purpose of seeking Plaintiff's suspension. And even if the tweet is read to imply that Columbia should act, that act is adhering to antidiscrimination laws. After all, Title VI means that schools receiving federal funds may not discriminate against anyone on the "ground of race, color, or national origin," 42 U.S.C. § 2000d, which, of course, includes Jewish students, *see Gartenberg v. Cooper Union for the Advancement of Sci. & Art*, 765 F. Supp. 3d 245, 253 (S.D.N.Y. 2025). Since antisemitism on campus could potentially trigger Columbia's obligations under Title VI to work to protect its Jewish students, *see id.* at 259 ("[A]ctionable discrimination includes an institution's 'deliberate indifference' to known instances of student-on-student harassment." (citation omitted)), asking Columbia to address antisemitism is fulfilling, not breaking, federal law, *cf. Kennedy v. Warren*, 66 F.4th 1199, 1208-10 (9th Cir. 2023) (finding that Senator Warren did not coerce Amazon into violating the First Amendment by asking it to "be more proactive in suppressing misinformation" while warning it was "potentially unlawful" to publish a particular book).

21

*Second*, the Complaint does not even specify what statements by Plaintiff triggered Representative Foxx's alleged jawboning.  Plaintiff vaguely alleges "[t]he speech … involved a number of references to Zionists and Zionism on James' personal social media," ECF No. 1 ¶ 18, but nowhere are these statements identified.[14]  Indeed, as explained above, *see supra* pp. 4-6, 10, Defendant was forced to scour state court pleadings just to understand the allegations here.  This is fatal to Plaintiff's case.  *See Odermatt v. Way*, 188 F. Supp. 3d 198, 215 (E.D.N.Y. 2016) ("Defendants argue that the Complaint … does not even identify the speech at issue … .  The Court agrees that the pleading is deficient."), *aff'd sub nom. Odermatt v. N.Y.C. Dep't of Educ.*, 694 F. App'x 842 (2d Cir. 2017); *Giachetto v. Patchogue-Medford Union Free Sch. Dist.*, 413 F. Supp. 3d 141, 144 (E.D.N.Y. 2016) (finding "Plaintiff has failed to allege the most basic element of a First Amendment retaliation claim" because the Amended Complaint references "an unspecified utterance" and "Plaintiff fails to identify what the exact utterance was.").  Simply put, the "Complaint 'does not specify what viewpoint was allegedly subjected to' retaliation, and thus Plaintiff 'has failed plausibly to allege that [Defendant's] actions' … were based on viewpoint." *Annabi*, 2026 WL 743513, at *7 (alteration in original) (citation omitted).

*Third*, the Staff Report and the February 12 Letter do not support Plaintiff's coercion case.  As to the Staff Report, it cannot be reasonably interpreted to call for any action against Plaintiff in any way.  In fact, contrary to Plaintiff's misleading allegation that the Staff Report "reveals James' name in Footnotes 267, 272, and 279, despite generally avoiding use of student names," ECF No. 1 ¶ 14, the reason James' name appears is that it was *already made public* by the cited sources (a New York Times article identifying James by name in connection with the

---

[14] Perhaps the reason the Complaint does not include the precise statements at issue is because they would reveal that Plaintiff was suspended because of their threatening nature and not because of any "criticism of Israel [or] support for the Palestinian people."  ECF No. 1 ¶ 1.

Instagram livestream saying, "Zionists don't deserve to live," and tweets from James's X account).[15]  Plaintiff cannot complain about Plaintiff's own public words.  As to the February 12 Letter, the Committee sought records concerning antisemitism, did not identify or single out Plaintiff in any way, and, like the Staff Report, did not ask Columbia to take any action against any student, including Plaintiff.  Indeed, regardless of whether it is the tweet, Staff Report, or letter, Plaintiff fails to allege any threat of taking away federal funding or doing anything else negative to Columbia in connection with Plaintiff.

*Finally*, Plaintiff's jawboning claim fails because of causation.  Since jawboning requires a state actor compelling a private actor to take adverse action against another private party, there is no plausible, or even possible, allegation that Representative Foxx's tweet resulted in any adverse action against Plaintiff due to the causation issues identified above, *see supra* pp. 10-12.

### B.    Plaintiff Cannot State a Claim for Tortious Interference with Contract

While Plaintiff's claim for tortious interference with contract is precluded by sovereign immunity for the reasons explained above, *see supra* pp. 17-19, Plaintiff also fails to plead a cognizable claim.  Such a claim requires: "(1) the existence of a valid contract between the plaintiff and a third party; (2) the defendant's knowledge of the contract; (3) the defendant's intentional procurement of the third-party's breach of the contract without justification; (4) actual breach of the contract; and (5) damages resulting therefrom." *Medtech Prods. Inc. v. Ranir, LLC*, 596 F. Supp. 2d 778, 813 (S.D.N.Y. 2008) (citation omitted).

### 1.  No Contract Exists Between Columbia and Plaintiff

Plaintiff fails to plausibly allege the existence of a valid contract with Columbia.  Despite Plaintiff's cursory claims to the contrary, the "Columbia student code," ECF No. 1 ¶ 40, is not a

---

[15] *See* Staff Report at 60 nn.267 & 272, 61 n.279.

contract.  *See, e.g.*, *Nungesser v Columbia Univ.*, 169 F. Supp. 3d 353, 370 (S.D.N.Y. 2016) (noting "[g]eneral policy statements and broad and unspecified procedures and guidelines will not suffice" nor will "a general statement of a university's adherence to existing anti-discrimination laws" (quotation marks and citation omitted)); *Bailey v. N.Y. L. Sch.*, No. 19-3473, 2021 WL 5500078, at *5 (2d Cir. Nov 24, 2021) ("While a contract can be formed when a school accepts a student for enrollment, a plaintiff must identify specific and discrete promises that were allegedly broken to state a breach of contract claim." (citation omitted)).  Plaintiff fails to identify with any specificity the promises made that would constitute an enforceable contract with Columbia.  Without doing so, Plaintiff fails to state a claim as to the first element.

### 2.  Representative Foxx Did Not Know About the Alleged Contract

A single allegation in the Complaint supports this element: "Foxx knew that this contract existed, given that she knew James was a student at Columbia."  ECF No. 1 ¶ 41.  Aside from the fact that no contract existed for Representative Foxx to be aware of, this single allegation is not sufficient pleading.  "[T]he plaintiff must 'provide specific allegations' of the defendant's knowledge and cannot survive a motion to dismiss by making merely a 'conclusory assertion' of knowledge."  *Medtech*, 596 F. Supp. 2d at 813 (citation omitted).  Indeed, under New York law, actual knowledge—not constructive knowledge or "should have known"—is required.  *Roche Diagnostics GmbH v. Enzo Biochem, Inc.*, 992 F. Supp. 2d 213, 221 (S.D.N.Y. 2013) (noting that Plaintiff's "constructive knowledge is inadequate to demonstrate [defendant's] knowledge for purposes of tortious interference").  Thus, just as how a "defendant's general awareness that the plaintiff did business with third parties is not enough," *Corning Inc. v. Shenzhen Xinhao Photoelectric Tech. Co.*, 546 F. Supp. 3d 204, 212 (W.D.N.Y. 2021), Defendant's general awareness that James was a student at Columbia is also not enough.

24

### 3.    Representative Foxx Did Not Intentionally Induce Columbia To Breach

Plaintiff fails to allege how exactly Columbia breached its student code when Columbia investigated, and subsequently disciplined, Plaintiff.  For example, the Complaint does not define or explain what the "Columbia student code" is or where it can be found, much less mention what specific provisions were implicated in Plaintiff's suspension.  "'To state a valid claim for breach of contract, the student must first identify an express promise' and then 'must state when and how the defendant breached that specific contractual promise.'"  *Khalil*, 2026 WL 775813, at *16 (cleaned up) (citation omitted); *see also Corning*, 546 F. Supp. 3d at 211 ("It is not enough to describe the contract in general terms … a plaintiff [must] identify the relevant terms … that existed that were breached by defendant.") (quotation marks and citation omitted)).

Here, Plaintiff fails to even "describe the contract in general terms," much less identify the specific terms that were allegedly breached.  Because of this, the Complaint also fails to plausibly allege any conduct that could be viewed as Representative Foxx attempting to induce Columbia to breach—there are no allegations, for example, that Representative Foxx forced Columbia to disregard its own disciplinary rules to penalize Plaintiff.  In fact, Columbia argued in state court that it followed protocol in Plaintiff's disciplinary proceedings.  *See* Mem. of Law in Supp. of Def. the Trustees of Columbia Univ. in the City of New York's Mot. to Dismiss the Compl. at 10, *James v. Columbia Univ.*, No. 655038/2024 (N.Y. Sup. Ct. Dec. 4, 2024) ("[T]he text of the relevant policies easily refutes Plaintiff's allegations of impropriety.").  Simply put, it is not sufficient for Plaintiff to allege that Representative Foxx induced a breach of an unidentified provision of an unidentified contract.

### CONCLUSION

For the foregoing reasons, Plaintiff's Complaint should be dismissed.

25

Respectfully submitted,

*/s/ Matthew B. Berry*
MATTHEW B. BERRY
 *General Counsel*
TODD B. TATELMAN
 *Deputy General Counsel*
ANDY T. WANG
 *Associate General Counsel*
ALICIA GARTEN
 *Assistant General Counsel*

OFFICE OF GENERAL COUNSEL
U.S. HOUSE OF REPRESENTATIVES
5140 O'Neill House Office Building
Washington, D.C. 20515
(202) 225-9700 (telephone)
matthew.berry@mail.house.gov

*Counsel for Defendant the Honorable Virginia Foxx*

April 27, 2026

26

**CERTIFICATE OF SERVICE AND COMPLIANCE**

I certify that on April 27, 2026, I caused the foregoing document to be filed via this

Court's CM/ECF system, which I understand caused service on all registered parties.  I further

certify that the foregoing document contains 8,292 words and 25 pages, which is compliant with

Local Civil Rule 7.1(c) and Rule 3.C. of the Court's Individual Rules and Practices in Civil

Cases (Feb. 2026 rev.).


/s/ *Matthew B. Berry*
Matthew B. Berry